No. 58,003

THEODORE A. NIRSCHL, *Appellant/Cross-Appellee,* v. DON WEBB, d/b/a WEBB PRODUCE CO., and PAXTON NATIONAL INSURANCE COMPANY, *Appellees/Cross-Appellants.*

(716 P.2d 173)

Opinion filed March 28, 1986.

*W.J. Fitzpatrick,* of Independence, and *Joseph R. Ebbert,* of Niewald, Waldeck, Norris & Brown, of Overland Park, argued the cause, and were on the briefs for appellant/cross-appellee.

*Monti L. Belot,* of Hall, Levy, Lively, Viets, DeVore & Belot, of Coffeyville, argued the cause, and was on the brief for appellees/cross-appellants.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the plaintiff, Theodore A. Nirschl, against the defendants, Don Webb, d/b/a Webb Produce Company, a licensed carrier and a resident of Oklahoma, and his liability insurance company, Paxton National Insurance Company (Paxton National), to recover damages for personal injuries and property damage sustained in an automobile collision. The case was tried twice to a jury. At the second trial, the jury found plaintiff Nirschl to be 51% at fault and defendant

Webb to be 49% at fault. The trial court entered judgment in favor of defendant Webb on his counterclaim. Plaintiff appealed and defendants filed a cross-appeal.

This case arose out of a truck accident which occurred on U.S. Highway 169-160 (169) three miles north of Cherryvale, Kansas, on January 6, 1983. The testimony established that plaintiff Nirschl was driving south on the highway followed immediately by a truck driven by David Smith and then followed by the tractor-trailer of defendant Webb. The vehicles approached a "T" intersection where Highway 169 is intersected by Olive Street, a county road into Cherryvale. The highway near the intersection is not marked as a "no passing zone" by double yellow lines on the roadway, but instead is marked by a broken yellow line which is the road marking used where passing is permitted. The Smith vehicle came up behind the Nirschl vehicle and proceeded to pass the vehicle on the left side without difficulty. Immediately thereafter, the Webb tractor-trailer started to pass the Nirschl pickup. As the Webb vehicle came alongside, the Nirschl truck suddenly turned to the left to make a left turn at Olive Street. Marks made at the scene of the collision showed that Nirschl commenced his turn approximately 60 feet north of the intersection and that Nirschl drove his pickup directly into the right side of the defendant Webb's vehicle. As a result of the collision, there was damage to both vehicles and plaintiff Nirschl suffered personal injuries.

Smith and Webb's driver both testified that Nirschl gave no signal of any kind to warn of his intended turn at Olive Street, but simply turned left into the side of the Webb tractor-trailer. Nirschl admitted that he never saw Webb's vehicle passing on his left prior to the impact but insisted that he gave a signal with his lights prior to making the turn.

Plaintiff Nirschl contended, in substance, that the cause of the accident was the act of the Webb vehicle in passing his vehicle within 100 feet of an intersection in violation of K.S.A. 8-1519, in failing to keep his vehicle under control, in failing to yield to the plaintiff who was making a left turn, and in failing generally to safely operate his vehicle. It was the position of defendant Webb that the plaintiff caused the collision by failing to give a proper left turn signal, failing to make a proper left turn, failing to keep a proper lookout, failing to keep his vehicle under control, and

failing to keep his vehicle in the proper traffic lane. As might be expected from the factual circumstances in this case, the jury found both Nirschl and Webb's driver to be negligent, finding plaintiff Nirschl to be 51% at fault and defendant Webb's driver to be 49% at fault. The trial court entered judgment in favor of defendant on defendant's counterclaim for damages suffered to defendant's vehicle.

The first point raised by the plaintiff on the appeal is that the trial court erred in refusing to permit the case to go to trial before the jury with Paxton National as a named party defendant in the action. As noted heretofore, Paxton National was a named party in the action pursuant to K.S.A. 66-1,128 which gives to a party injured by a negligent insured motor carrier a direct cause of action against the insurance company. In its order, the trial court directed that Paxton National should remain a party in the case and that any judgment rendered against the defendant Webb should also result in a judgment against Paxton National. In holding that Paxton National should not be a named defendant at the trial before the jury, the court reasoned that the primary responsibility of the jury in a comparative negligence case is to determine the percentage of causal fault of those parties which may have been responsible for the accident. Because Paxton National could not have been at fault in the case, the trial court excluded it as a named defendant on the basis that the subject of insurance should not be injected into the case, thus eliminating a prejudicial element having no relevance on the issue of comparative fault.

The plaintiff contends that, because he had a direct cause of action against Paxton National under the provisions of K.S.A. 66-1,128 as the insurance company for the carrier Webb, Paxton National should have been a named defendant at the trial before the jury. According to plaintiff, if the carrier's insurance company is directly liable, the jury must be so instructed prior to arriving at its verdict. The defendants argue that the trial court did not err in excluding Paxton National as a named defendant before the jury because of the legislative policy in Kansas that evidence of insurance of a party in a tort case should ordinarily be excluded because of the prejudice it creates.

We have concluded that the trial court did not err in excluding Paxton National as a named defendant at the trial where the jury

determined the comparative fault of the two drivers involved in the collision. It is the law, of course, that under K.S.A. 66-1,128, a party injured by the negligence of an insured motor carrier has a direct cause of action in tort against the insurer. The purpose of that statute is discussed in *Kirtland v. Tri-State Insurance Co.*, 220 Kan. 631, 556 P.2d 199 (1976), where this court held that K.S.A. 66-1,128 is not substantive, but is remedial in nature. It does not give the injured party any new rights or a new cause of action. The right to sue the insurance company directly is only a statutory remedy designed to assist the injured party in effectuating a successful recovery when liability of the motor carrier is established. The opinion in *Kirtland*, having characterized the direct action against the insurance company as being procedural and not substantive, held that an injured plaintiff would have two years to bring a suit against the carrier's insurer, because the cause of action was one in tort and not based on statute.

It has long been the law of Kansas that, in an automobile collision case, evidence that a party was or was not insured against liability for harm suffered by another is generally inadmissible to show fault or lack thereof, because it is usually irrelevant to any of the issues in the case and may induce juries to decide cases on improper grounds. K.S.A. 60-454; *Ayers v. Christiansen*, 222 Kan. 225, 564 P.2d 458 (1977). The court in *Ayers* recognized that this general rule is qualified by a number of exceptions, and where the fact of insurance is relevant to some issue other than fault or lack thereof, it may be admissible.

In *Klinzmann v. Beale*, 9 Kan. App. 2d 20, 670 P.2d 67 (1983), the Court of Appeals was faced with the situation where an insurance company was a party to the litigation under K.S.A. 66-1,128 and the question arose whether its interest in the lawsuit should be disclosed to the jury. *Klinzmann* held that where an insurance company is a party to a lawsuit, it may be impossible to completely insulate the jury from knowledge of insurance. Thus, merely mentioning the insurance relationship between defendants in an action under K.S.A. 66-1,128 does not hold the same inherent prejudice as does the mention of insurance in an action where the insurer is not, and cannot legally be, a party. The court noted that the long-standing rule in Kansas is that the mere mention of defendant's insurance in an automobile collision case is reversible error. This strict rule must be consid-

ered somewhat tempered, however, by the provisions of K.S.A. 66-1,128.

*Schmidt v. Farmers Elevator Mutual Ins. Co.,* 208 Kan. 308, 491 P.2d 947 (1971), involved an action against the Farmers Co-op Grain and Supply Company (Co-op) and its insurance carrier, Farmers Elevator Mutual Insurance Company, after a fire consumed the plaintiff's garage as the result of negligence of a Co-op employee while working on a propane truck owned by the Co-op. The trial court sustained the motion of Farmers Elevator Mutual Insurance Company for dismissal from the lawsuit, even though, as the Co-op's insurance carrier, it had been properly joined as a defendant under the provisions of K.S.A. 66-1,128. On appeal, this court held that the insurance company was a proper defendant in the action and that the trial court had erred in dismissing it from the lawsuit. This error, however, was held to be harmless. The court concluded that it was hard pressed to understand how the continued presence of the insurance carrier in the case could have had any bearing on the ultimate issues of liability between the plaintiff Schmidt and his adversaries.

We have concluded that the trial court in this case did not err in ruling that Paxton National Insurance Company should not be a named defendant at the trial of the case before the jury and that the jury should not be told that defendant Webb was insured by Paxton National. The sole issues being tried by the jury were the comparative fault of plaintiff Nirschl and defendant Webb's driver and the damages suffered by the parties. There was no logical reason to inject the subject of insurance before the jury. Such a holding is consistent with the purpose of K.S.A. 60-454, which prohibits the admission of evidence of liability insurance before the jury to prove negligence and also with the legal principles governing the trial of comparative negligence cases in this state. The purpose of the comparative fault statute is to impose individual liability for damages based upon proportional fault of all of the parties responsible for the injury. A party is at fault when he is negligent and his negligence caused or contributed to the event which brought about the injury or damages for which the claim is made. *Allman v. Holleman,* 233 Kan. 781, Syl. ¶ 4, 667 P.2d 296 (1983). This court has held that where there is no evidence of causal negligence on the part of a person, the

question of that person's negligence need not be submitted to the jury. *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶ 15, 681 P.2d 1038, *cert. denied* 105 S. Ct. 365 (1984).

In the present case, there was no claim of comparative fault on the part of defendant Paxton National. There was no good reason to advise the jury of the presence of the insurance company in the lawsuit. Paxton National properly remained a party for any appropriate judgment that might be required by the jury's verdict finding its insured, defendant Webb, at fault.

We wish to emphasize that in this case a separate attorney for Paxton National did not actively participate in the case, so there was no need for further explanation to the jury. There may also be other situations where the circumstances will justify the trial court in advising the jury of the presence of an insurance company as a party to the case. We simply hold that it was not error for the trial court, under the factual circumstances in this case, to order that Paxton National Insurance Company not be named a defendant or otherwise mentioned at the trial before the jury.

The plaintiff's second point on the appeal is that the trial court erred in refusing to give certain instructions which the plaintiff requested. The instructions requested were essentially PIK Civ. 2d 8.16a, 8.16b, and 8.12. PIK Civ. 2d 8.16a simply requires a vehicle overtaking a vehicle proceeding in the same direction to pass to the left thereof at a safe distance and not to drive to the right of the roadway until safely clear of the overtaken vehicle. PIK Civ. 2d 8.16b provides, in substance, that no vehicle shall overtake a vehicle going in the same direction unless the left lane is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction. PIK Civ. 2d 8.12 prohibits a person from driving a vehicle at a speed greater than is reasonable under the conditions and hazards then existing. We hold that the trial court did not err in refusing to give these requested instructions, because there was no evidence to justify instructions on those subjects.

The plaintiff's third point is that the trial court erred in giving instructions based on PIK Civ. 2d 8.22b, 8.26, and 8.03B as modified. PIK Civ. 2d 8.22b provides that the driver of a vehicle intending to turn left shall, when practical, make a left turn to the

left of the center of the intersection. The effect of this section is to forbid premature turns before the intersection is actually reached. 8.26 requires that a signal by hand or arm or by signal lamp be given when a driver of a motor vehicle is making a left turn. 8.03B requires the driver of a vehicle to keep a lookout to the rear if the movement of his vehicle may affect the operation of a vehicle to the rear. We find no error in the giving of these instructions, because they concern alleged acts of negligence on the part of plaintiff which were claimed by the defendant and which were justified by the evidence.

The fourth point raised by plaintiff is that the trial court erred in allowing a highway patrolman to testify on cross-examination that, although the act of the driver of the Webb vehicle in overtaking a vehicle within 100 feet of an intersection was a violation of the Kansas statute, it was only a technical violation. He further testified that he would not have given the driver of the Webb vehicle a ticket for passing under the circumstance then existing. Later, at the specific request of Nirschl's counsel, another trooper testified by deposition that no citation was issued to either Nirschl or the driver of the Webb vehicle at the accident scene.

An unsual situation was presented in this case. There was evidence that the accident occurred at an unmarked "T" intersection of a U.S. highway with a county road. Just before Webb's driver, a nonresident of Kansas, started to pass, he had left a marked "no passing zone" at another intersection where he was prohibited from passing by a solid yellow line down the center of the highway. As he approached Olive Street, he noted that there were no signs posted which prohibited passing and there was a *broken* yellow line in the middle of the highway. Highways are marked by the Department of Transportation with a broken yellow centerline to show that passing is permitted at that point. Such a marking of the highway is provided for in the Manual on Uniform Traffic Control Devices for Streets and Highways § 3A-7, (3d rev. 1984). The legislature authorized the Secretary of Transportation to adopt the uniform system of traffic control devices. These regulations have the force and effect of law. *Waits v. St. Louis-San Francisco Rly. Co.*, 216 Kan. 160, 531 P.2d 22 (1975); *Every v. Jefferson Ins. Co. of N.Y.*, 4 Kan. App. 2d 715, 719, 610 P.2d 645 (1980).

It is obvious that K.S.A. 8-1519(a)(2), which prohibits a vehicle from overtaking on the left when approaching within 100 feet of an intersection, might not be complied with by a nonresident motorist at a place where the Department of Transportation has marked a highway with a broken yellow centerline which indicates to motorists that passing is permitted. These conflicting rules present particular problems where a well-traveled U.S. highway marked with a broken yellow centerline intersects with a section line county road which is not apparent to a driver on the main highway until he has actually arrived at the point of the intersection. It would be helpful to motorists if the legislature would address this conflict in the rules of the road.

We have concluded that, although the trial court should not have permitted the highway patrolman to testify that the defendant's driver's act of passing within 100 feet of the intersection was only a technical violation and that a citation was not warranted, this was not such a prejudicial error as to warrant reversal of the case in view of the court's unqualified instruction that overtaking a vehicle on the left within 100 feet of an intersection is a violation of the law and where the jury found the driver of the defendant's vehicle 49% negligent for that reason.

The plaintiff's fifth point is that the trial court erred in permitting the defendant's driver to testify that he was ignorant of the law prohibiting the passing of another vehicle within 100 feet of an intersection. He testified that he thought the passing was completely permissible, because the road was clearly marked with a broken yellow centerline, which authorized passing at that point. We find no error in this ruling of the court. We believe that the instructions of the court properly advised the jury as to the applicable law and then left it up to the jury to allocate the causal negligence in the case.

The last point raised by the plaintiff on the appeal is that a new trial should be granted because of certain remarks of defendants' counsel in his closing arguments. We have considered the record on appeal and concluded that counsel's statement did not rise to a level of prejudice sufficient to justify a reversal of the case.

In view of our disposition of the issues on appeal, the issue raised in the cross-appeal of the defendants is moot and need not be considered.

The judgment of the district court is affirmed.

HERD, J., dissenting: There are two trial errors in this case.

The first is the admission of the highway patrolman's testimony to the effect that a vehicle passing another within 100 feet of an intersection was a mere technical violation of the traffic laws for which he would not cite the driver.

K.S.A. 8-1519 provides:

"(a) No vehicle shall be driven on the left side of the roadway under the following conditions:

. . . .

"(2) When approaching within one hundred (100) feet of or traversing any intersection . . . ."

A highway patrolman has no authority to excuse a person from obeying the law nor can he qualify as an expert on interpretation of the law. Interpretation of the law is a function of the court.

Expert testimony may not be used to usurp the jury's function. Here, the patrolman's testimony was introduced to nullify the truck driver's admitted violation of a statute. His testimony was not only irrelevant but goes to the ultimate question of fault.

It is not a function of the judiciary to admit evidence downgrading statutes which it deems foolish or unwise. The wisdom of a statute is a legislative prerogative. The court's actions here could be interpreted as an attempt to nullify the statute.

The second trial error was the trial court's ruling that Paxton National Insurance Company could not be identified as a defendant in the suit. The court based its decision on two points, both of which are in error. First, the trial court reasoned that under K.S.A. 60-258a, the comparative negligence law, the disclosure of the insurance company as a defendant is inconsistent with comparing fault and assessing damages since the insurance company's fault is indirect, if at all. The adoption of comparative negligence did not change the law with regard to the liability of insurers of common carriers in tort under K.S.A. 66-1,128. The liability of the insurance company is vicarious as is that of the carrier. The driver committed the wrong but his principals, the carrier and the insurer, are responsible for his negligence and are proper parties to the suit and this relationship should be disclosed to the jury.

The trial court also ruled that disclosing Paxton as a party would be improper under K.S.A. 60-454. That statute bans mentioning insurance in tort actions to prove negligence or wrong-

doing. This statute is an example of the collateral source doctrine. We do not have that situation here. Under K.S.A. 66-1,128 the carrier's insurance company is directly liable in tort for the negligent actions of the carrier and its agents. K.S.A. 60-454 is inapplicable where the insurance company is a party to the lawsuit pursuant to K.S.A. 66-1,128. The insurance company is by statute made a primary source. In *Fitzgerald v. Thompson,* 167 Kan. 87, 89-91, 204 P.2d 756 (1949), Chief Justice Harvey explained the meaning of K.S.A. 66-1,128:

"Our statute (G.S. 1935, 66-1,128) provides that no certificate or license shall be issued by the public service commission to any public or contract motor carrier of property or passengers, or private motor carrier, until and after an applicant therefor shall have filed with and the same has been approved by the public service commission, a liability insurance policy, 'which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier.'

"In *Dunn v. Jones,* 143 Kan. 218, 53 P.2d 918, it was held that such policy when given indemnifies against 'the condition of being liable,' and that such obligation 'rests on the insurer from the time of accident resulting in injury' and 'the obligation may be enforced by action brought directly against the insurer by the person sustaining injury.'

. . . .

"The rule deducible from the above authorities is that the liability assumed by the insurer is neither a contract liability nor a statutory liability. It is a tort liability—the liability in tort which the insured has 'from the negligent operation' of his business under the permit. The fact that this tort liability is determined by the statute and by the insurance policy does not keep it from being a tort liability.

"If the petition states a cause of action in tort against the permit holder and alleges the filing and approval of the liability policy it states a cause of action against the insurer. This is the basis for the holdings of the court that one who sustains injury in his person or property by the negligent operation under the permit of the permit holder may sue both the permit holder and the insurer, or either one of them, and the action is in tort, not in contract."

*Fitzgerald* has been consistently followed by the court. See *Kirtland v. Tri-State Insurance Co.,* 220 Kan. 631, 633, 556 P.2d 199 (1976); *Klein v. Wells,* 194 Kan. 528, 536, 400 P.2d 1002 (1965); *Hanson v. Zollars,* 189 Kan. 699, 702, 371 P.2d 357 (1962); *Streebin v. Capitol Truck Lines,* 182 Kan. 527, 531, 322 P.2d 776 (1958). The majority opinion disregards this long line of authority.

I would hold the trial court committed reversible error in admitting the patrolman's testimony and in excluding mention of Paxton National Insurance Company as a named defendant. We

have held that an 'order of the district court made in direct violation of a statutory provision is not harmless error as a matter of law. *Gardner v. Pereboom,* 194 Kan. 231, 235, 398 P.2d 293 (1965). The trial court's errors here are in direct violation of statutes and thus cannot be termed "harmless error." I would reverse and remand for a new trial.